**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| John Harmon, dba Harmon Company Produce,<br><br>            Plaintiff,<br><br>vs.<br><br>RAR Enterprises Incorporated, dba Ramirez Brothers; Raul Ramirez; Jane Doe Ramirez,<br><br>            Defendants. | CV 10-01813-PHX-FJM<br><br>**ORDER** |

The court has before it plaintiff's motion for summary judgment (doc. 71), defendants' response (doc. 74), plaintiff's reply (doc. 78), and plaintiff's motion to strike declaration of Raul Ramirez in support of defendants' response (doc. 79).

**I**

When considering a motion for summary judgment, we take undisputed facts as true and evaluate disputed facts in the light most favorable to the non-moving party. Anthoine v. N. Cent. Cntys. Consortium, 605 F.3d 740, 745 (9th Cir. 2010). Plaintiff is a farmer and an agricultural broker. Defendant RAR Enterprises ("RAR") is a California corporation. Defendant Raul Ramirez is the president of RAR. He is married to defendant Genoviva Ramirez and resides in California. In June 2009, plaintiff agreed to deliver watermelons grown in Coolidge, Arizona to RAR's warehouse in Los Angeles, California. Between June

19, 2009 and July 17, 2009, plaintiff shipped a total of twenty-seven semi-truck loads of watermelons to RAR.  Plaintiff issued invoices for these shipments amounting to a total balance due of $79,929.  In late August 2009 plaintiff received two checks for payment, each in the amount of $7,463.70.  The checks were drawn on the account of "Ramirez Brothers RAR Enterprises, Inc." and were signed by Raul Ramirez and Alvaro Ramirez.  Both checks were returned to plaintiff for insufficient funds.  Defendants admit that there were insufficient funds to cover the checks, but deny that Raul intended to defraud plaintiff. DSOF ¶ 63, 64 (doc. 77).

After unsuccessfully trying to obtain payment from RAR, plaintiff filed a complaint with the United States Department of Agriculture seeking an award pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499.  In January 2010, a default order was entered in favor of plaintiff finding that RAR violated PACA.  RAR was ordered to pay plaintiff $79,929 as reparation with interest as well as the $500 complaint filing fee.

On February 17, 2010, the day before the PACA order became final, Raul spoke with plaintiff's wife by telephone.  He acknowledged his awareness of the PACA action. According to Raul, he explained that the return of the checks due to insufficient funds was an "unfortunate administrative oversight."  DSOF ¶ 62.  Raul also contends that he tried to make partial payment arrangements, but plaintiff's wife refused, stating that acceptance of partial payments would interfere with plaintiff's PACA claim.  Id.  Plaintiff agrees that this conversation took place, but is silent as to the details.  PSOF ¶¶ 28-30 (doc. 72).  On May 27, 2010, plaintiff sent letters to RAR and Raul requesting that defendants cure the bad checks. Defendants received the letters but did not respond.  To date, plaintiff has not been paid the balance owed.

Plaintiff moves for summary judgment on all three counts for relief: (1) breach of contract; (2) insufficient funds check; and (3) PACA award.

**II**

- 2 -

Count one, breach of contract, and count three, PACA award, were asserted solely against defendant RAR. Defendants admit that the facts surrounding the delivery of the watermelons, the failure of RAR to pay plaintiff, and the PACA default order are undisputed. See PSOF ¶¶ 1-45. And defendants do not dispute RAR's liability as to either count one or count three. Accordingly, we grant summary judgment to plaintiff on counts one and three.

**III**

Count two, insufficient funds check, was asserted against RAR and the individual Ramirez defendants. Defendants first argue that Raul cannot be held individually liable because he was acting in his official capacity as RAR president when he signed the checks. According to defendants, the applicable statute does not contemplate holding corporate officers individually liable for corporate debts. Based on this principle, defendants ask that we deny summary judgment to plaintiff and enter summary judgment in favor of Raul and Genoviva Ramirez on count two.

Arizona's insufficient funds check statute imposes liability on

> [a] person who, for himself or for another, with intent to defraud, makes, draws, utters or delivers to another person or persons a check or draft on a bank or depositary for payment of money, knowing at the time of such making, drawing, uttering or delivery, that he or his principal does not have an account or does not have sufficient funds in, or credit with, such bank or depositary to meet the check or draft in full upon presentation.

A.R.S. § 12-671(A). Plaintiff concedes that Arizona courts have not discussed the statute's application to agents issuing bad checks on behalf of corporations. Nevertheless, plaintiff argues that the plain statutory language places liability on a corporate official who issues a bad check on behalf of his corporation. We agree. The statute imposes liability when a person writes a check "for himself or for another. . . knowing at the time. . . that he or his principal. . . does not have sufficient funds." Id. This language plainly suggests that principles of agency apply. It is axiomatic that a corporation can act only through its agents or officers. See Lois Grunow Mem'l Clinic v. Davis, 49 Ariz. 277, 284, 66 P.2d 238, 241 (1937). Although a corporate officer is usually shielded from individual liability for good

- 3 -

1 faith actions taken as a part of his corporate duties, he remains personally liable for
2 "intentionally harmful or fraudulent conduct." Albers v. Edelson Technology Partners L.P.,
3 201 Ariz. 47, 52, 31 P.3d 821, 826 (Ct. App. 2001). Because a person is only liable under
4 A.R.S. § 12-671 when he writes a bad check with fraudulent intent, a corporate officer
5 signing a company check could be held personally liable for his actions if he signed the
6 check fraudulently.

7 Defendants argue that there is no basis to hold Genoviva Ramirez liable under A.R.S.
8 § 12-671 for two reasons. First, defendants argue that Genoviva is a stay-at-home mother
9 who is not employed by or involved with RAR's business dealings. Second, defendants
10 argue that Genoviva cannot be held liable as the spouse of Raul Ramirez, because Raul
11 cannot be held individually liable for RAR's corporate debts. Plaintiff, however, has not
12 asserted that Genoviva is individually liable under A.R.S. § 12-671 as the result of her own
13 conduct. Instead, plaintiff argues that Genoviva is properly joined under Arizona law, which
14 imputes the tortious conduct of Raul to the marital community of Raul and Genoviva
15 Ramirez. Spouses must be sued jointly under Arizona law in order to reach community
16 assets. See A.R.S. § 25-215(D); see also Rodgers v. Bryan, 82 Ariz. 143, 148, 309 P.2d 773,
17 776 (1957) (holding community property is liable for intentional tort committed by one
18 spouse when tort was committed for the benefit of the community). Defendants state that
19 Raul was not acting on behalf of the marital community when he signed the checks. DSOF
20 ¶ 65. But it is undisputed that Raul was acting in his role as RAR president. The wages Raul
21 earns from his employment with RAR are community property. Kelly v. Kelly, 198 Ariz.
22 307, 308, 9 P.3d 1046, 1047 (2000). In signing checks as part of his job duties, Raul was
23 acting to earn his salary and was therefore acting to benefit the community. Based on the
24 undisputed facts, community assets can be reached for torts committed by Raul in his
25 capacity as RAR president. And as discussed above, we find that Raul can be held
26 individually liable for violating A.R.S. § 12-671. The martial community of Raul and
27 Genoviva Ramirez can be held liable for Raul's actions if he violated the statute.
28

1    Plaintiff contends that he is entitled to summary judgment on count two because he
2 established evidence of Raul's intent to defraud that defendants failed to rebut.  Under
3 A.R.S. § 12-671(C), a showing that there were insufficient funds to cover the check and that
4 the check-writer failed to pay the check within twelve days of receiving notice of non-
5 payment is prima facie evidence of fraudulent intent.  Defendants admit that the checks were
6 returned to plaintiff for insufficient funds, that plaintiff provided RAR and Raul with written
7 notice of the deficiency, and that defendants did not respond to the notice.  Defendants argue,
8 however, that RAR and Raul did not intend to defraud plaintiff.  DSOF ¶¶ 63, 64.  To support
9 this argument, defendants include Raul's sworn declaration (doc. 75). Raul states that "[a]fter
10 checking with RAR staff that corporate funds were available to cover the [c]hecks, I signed
11 them in my official capacity as president of RAR," R. Ramirez Declaration, ¶ 14, and that
12 "[s]ubsequently, I discovered that the [c]hecks were returned for insufficient funds due to
13 administrative oversight by the staff at RAR. Id. ¶ 15.  Under Rule 56(c)(4), Fed. R. Civ. P.,
14 declarations used to oppose a motion for summary judgment must be based on personal
15 knowledge, state facts that are admissible in evidence, and show the declarant's competence
16 to testify.  Plaintiff moves to strike portions of paragraphs fourteen and fifteen of Raul's
17 affidavit on the grounds of hearsay and lack of foundation.[1]

18    First, plaintiff argues that Raul's statement in paragraph fourteen that he signed the
19 checks after he checked with RAR staff that corporate funds were available relies on
20 inadmissible hearsay testimony.  According to plaintiff, RAR staff must have stated to Raul
21 that funds were available to cover the checks.  Hearsay is an out of court statement offered
22 to prove the truth of the matter asserted, and is inadmissible unless an exception applies.
23 Fed. R. Evid. 801, 802.  Here, defendants concede that the checks were returned due to

---

[1] Plaintiff filed a separate motion to strike (doc. 79) in violation of LRCiv 7(m)(2), which requires that objections to the admission of evidence relating to a motion for summary judgment must be made in the party's response to the opposing party's statement of material facts, and not in a separate motion to strike.  Because we conclude that the challenged evidence is admissible on the merits, however, we overlook the procedural deficiency.

- 5 -

insufficient funds. Thus, any statements by RAR staff to Raul that corporate funds were available are not offered to prove that adequate funds were in fact available. Instead, they are offered to establish the effect on Raul, the listener. If Raul was told that there were funds available and he believed that statement to be true when signing the checks, this would establish both that he did not know that funds were insufficient and that he did not intend to defraud plaintiff. Statements by RAR staff to Raul concerning the availability of funds to cover the checks, therefore, are not hearsay. Plaintiff also argues that Raul's assertion that "I discovered that the [c]hecks were returned for insufficient funds due to administrative oversight by the staff at RAR," R. Ramirez Affidavit, ¶ 15, is hearsay. But this assertion does not contemplate any statements made by Raul or others, and accordingly is not hearsay.

Plaintiff next contends that even if Raul did not receive any communications from RAR staff in reaching his conclusions concerning the sufficiency of funds, his assertions lack foundational basis. A witness may not testify on a matter unless there is sufficient evidence to show that the witness has personal knowledge. Fed. R Evid. 602. Here, Raul is the president of RAR. As president, he should have personal knowledge about the financial status and operations of his company, including whether his staff committed administrative error. Indeed, plaintiff himself argues that as RAR president, Raul "better than anyone else, was in a position to know the financial condition of the company" and "had the capacity to know if the corporation had sufficient funds in the account before he delivered the bad checks." MSJ at 8. Because we conclude that the challenged statements in Raul's affidavit are admissible, we deny plaintiff's motion to strike.

Thus, the remaining issue is whether the evidence offered by defendants is sufficient to rebut the prima facie evidence of fraudulent intent presented by plaintiff. For Raul to be liable under A.R.S. § 12-671, he must have known there were insufficient funds to cover the checks when he signed them, and did so with the intent to defraud plaintiff. Questions concerning state of mind, including a person's knowledge of particular conditions, are generally inappropriate for summary judgment because they present factual issues. Braxton-

Secret v. A.H. Robins Co., 769 F.2d 528, 531 (9th Cir. 1985). When facts are undisputed, inquiries into state of mind may become questions of law that can be resolved at this stage. But even when presented with undisputed facts, we should not grant summary judgment if contradictory inferences can be drawn. Id.

Here, contradictory inferences can be drawn as to whether Raul intended to defraud plaintiff when signing the RAR checks. Raul states that he checked with RAR staff to confirm that corporate funds were available before he signed the two checks. Plaintiff does not dispute this fact, instead arguing that the vagueness of the statement is not enough to rebut the presumption of fraud. According to plaintiff, "it is this choice of words upon which hinges [d]efendant's entire defense to the claim of intent to defraud." Reply at 5. That is precisely why we cannot say as a matter of law that Raul knew there were insufficient funds and intended to defraud plaintiff when writing the two checks. If he truly believed that there were sufficient funds to cover the checks when he wrote them, then he was trying in good faith to pay plaintiff. Plaintiff has not presented any additional evidence to establish Raul's fraudulent intent other than the return of the checks for insufficient funds and the failure of the checks to be corrected within twelve days of sending notice. The question of whether Raul knew there were insufficient funds and intended to defraud plaintiff hinges on Raul's credibility, and is therefore an issue best left for trial. We deny summary judgment for plaintiff as to count two, insufficient funds check under A.R.S. § 12-671.

Defendants argue that Raul and Genoviva Ramirez are entitled to summary judgment in their favor on count two. Because we hold that the marital community of the Ramirez's can be liable if Raul committed fraud, and that the question of Raul's intent in signing the checks is premature for resolution, we deny the Ramirez defendants' request for summary judgment.

**IV**

**IT IS ORDERED DENYING** plaintiff's motion to strike (doc. 79).

**IT IS ORDERED GRANTING IN PART AND DENYING IN PART** plaintiff's motion for summary judgment (doc. 71).  **IT IS ORDERED GRANTING** summary judgment for plaintiff on count one, breach of contract.  **IT IS ORDERED GRANTING** summary judgment for plaintiff on count three, PACA award.  **IT IS ORDERED DENYING** summary judgment for plaintiff on count two, insufficient funds check.  **IT IS ALSO ORDERED DENYING** summary judgment for defendants Raul and Genoviva Ramirez on count two, insufficient funds check.

DATED this 30th day of November, 2011.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge